IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
7:13-CR-74-BR-2
7:14-CV-202-BR

JORGE ERNESTO TINOCO,          )
                               )
          Petitioner,          )
                               )
     v.                        )          **MEMORANDUM AND**
                               )          **RECOMMENDATION**
UNITED STATES OF AMERICA,      )
                               )
          Respondent.          )

This case comes before the court on petitioner's pro se petition ("petition") (D.E. 90) to

vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 ("§ 2255") and the

government's motion to dismiss (D.E. 98). Grounds 1 and 2 for the petition were referred to the

undersigned Magistrate Judge for the conduct of an evidentiary hearing, which has been held,

and issuance of a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (*See*

6 Apr. 2015 Order (D.E. 104) 8).[1]  For the reasons stated herein, it will be recommended that the

government's motion to dismiss as to Grounds 1 and 2 of the petition be granted.

## BACKGROUND

### I.    PETITIONER'S CONVICTION AND SENTENCING

On 4 March 2013, petitioner was charged via criminal complaint (D.E. 1) with making

false statements in violation of 18 U.S.C. § 1001. On 21 August 2013, a 21-count superseding

indictment (D.E. 40) was filed that charged petitioner with: conspiring with others to defraud the

United States Government by obtaining false claims pursuant to 18 U.S.C. § 286 (Count 1),

making a false statement regarding a matter within the jurisdiction of the United States

---

[1] As discussed in more detail below, the 6 April 2015 Order dismissed Grounds 3 and 4 for the petition.

Government pursuant to 18 U.S.C. § 1001 (Counts 9 and 10), making false claims to the United States Government pursuant to 18 U.S.C. § 287 (Counts 16-19), possessing five or more false identity cards pursuant to 18 U.S.C. § 1028(a)(3), b(1)(B) (Count 20), and using the identity of another individual to perpetuate a crime pursuant to 18 U.S.C. § 1028A ("§ 1028A") (Count 21). Petitioner was represented by attorney Todd Allen Smith ("Smith"). *See* Notice of Smith's Appearance (D.E. 47).

On 7 November 2013, petitioner pleaded guilty to conspiracy to defraud the United States with respect to false, fictitious, and fraudulent claims, in violation of 18 U.S.C. § 286 (Count 1); and aggravated identity theft, in violation of 18 U.S.C. §§ 1028A(a)(1) and 2 (Count 21) pursuant to a plea agreement. *See* 7 Nov. 2013 Minute Entry (D.E. 62). Petitioner was provided a Spanish interpreter for the hearing. *Id.* In the plea agreement, petitioner made acknowledgements regarding sentencing and his appeal rights. Plea Agmt. (D.E. 64) 1-2 ¶ 2.c.

On 1 April 2014, petitioner was sentenced to a term of 52 months imprisonment. J. (D.E. 79) 2 (1 Apr. 2014). Petitioner was, again, provided a Spanish interpreter for the hearing. 1 Apr. 2014 Minute Entry (D.E. 77). Petitioner did not appeal his conviction.

## II.    THE § 2255 PETITION

On 22 September 2014, petitioner filed the instant § 2255 petition. In it, he raised four claims asserting that counsel was ineffective in his: (1) failure to file a notice of appeal after being instructed to do so (Pet. 4-5 (Ground 1)); (2) failure to investigate an element of an offense to which petitioner plead guilty (Pet. 5-7 (Ground 2)); (3) failure to challenge the sentencing enhancement applied to petitioner's sentence (Pet. 7-8 (Ground 3)); and (4) failure to move for a two-level guideline reduction. (Pet. 8-9 (Ground 4)). Grounds 3 and 4 were dismissed by the court in its 6 April 2015 Order. 6 Apr. 2015 Ord. 8.

### III. PROCEEDINGS ON THE § 2255 PETITION

Upon review of the petition and the government's motion to dismiss, the court concluded that an evidentiary hearing was required on the claims raised in Ground 1 and 2 of petitioner's motion. *See* 6 Apr. 2015 Ord. 5, 6-7, 8. The court appointed counsel for petitioner for the purposes of the hearing. *See id.* at 8; *see also* Notice of Attorney Appearance by Seth Allen Neyhart (D.E. 106)). The hearing was conducted on 16 July 2015 (*see* D.E. 115), for which petitioner was provided an interpreter (Redacted/Corrected Transcript of § 2255 Hearing ("Tr.") (D.E. 126) 3:7-10).[2]

At the hearing, petitioner testified on his own behalf, and the government presented the testimony of Smith. *See generally* Tr. 8:6 to 77:25. The court admitted five exhibits offered jointly by the parties: a birth certificate in the name of Eli Valle (Jt. Ex. 1); a birth certificate in the name of Eli Sierra (Jt. Ex. 2); identification documents taken from petitioner during a search, including a Social Security card in the name of Eli Valle (Jt. Ex. 3); a background report on Eli Sierra obtained during the underlying criminal investigation (Jt. Ex. 4); and a driver's license report obtained on Eli Sierra during the § 2255 proceeding (Jt. Ex. 5). *See* Jt. Factual Stips. & Jt. Ex. List ("Stips.") (D.E. 114) 3; Tr. 7:14-19. The court also admitted the one exhibit offered by petitioner alone: the presentence investigation report on petitioner (Pet. Ex. 1; D.E. 70). *See* Tr. 12:20 to 13:2. In addition, the court admitted four exhibits offered by the government alone: the plea agreement into which petitioner entered in the underlying case (Gov. Ex. 1; D.E. 64; Tr. 20:9-13); a supplemental affidavit by petitioner in support of the petition (Gov. Ex. 2; D.E. 103; Tr. 22:12-15); a letter from Smith to petitioner dated 1 April 2014 (Gov. Ex. 3; D.E. 99-1; Tr.

---

[2] The government requested redactions from the original transcript (D.E. 121). *See* Gov. Redaction Request (D.E. 124). The transcript contains numerous typographical and other errors. Although none appear to be material, the clerk's office is resubmitting the transcript to the court reporter for issuance of a corrected version, which is expected to be available during the objection period.

55:2-6); and an investigation report by United States Immigration and Customs Enforcement within the United States Department of Homeland Security dated 20 March 2013 relating to the underlying case ("ICE Investigation Rep.") (Gov. Ex. 4; D.E. 117; Tr. 64:10-16). At the parties' request, the court temporarily sealed all the exhibits and directed them to file a motion for any permanent sealing they sought. *See, e.g.*, Tr. 66:6-19; 78:11 to 79:1. The parties timely filed a joint motion to seal (D.E. 118) that will be addressed by separate order.

Petitioner filed a post-hearing supplemental memorandum (D.E. 125) and a supplement to the memorandum (D.E. 128). The government filed a memorandum (D.E. 127) in response to petitioner's post-hearing memorandum.

## DISCUSSION

### I. APPLICABLE LEGAL PRINCIPLES

#### A. Standard of Review for § 2255 Motions

Pursuant to § 2255, a prisoner may seek correction or vacation of a sentence on the grounds that: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose such sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). "[T]he burden of proof is on the petitioner to establish his [§ 2255] claim by a preponderance of the evidence." *Albarran-Rivera v. United States*, No. 7:10-CR-95-FL-3, 2013 WL 5570956, at *7 (E.D.N.C.) (citing *Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958) (per curiam) ("Because the proceeding under 28 U.S.C. § 2255 is a civil collateral attack upon the judgment of conviction, the burden of proof is upon petitioner to establish [his claim] by a preponderance of evidence . . . .")), *rep. & recomm. adopted by* 2013 WL 5570956, at *5 (9 Oct. 2013). Generally, an evidentiary hearing is required under § 2255 "[u]nless it is

4

clear from the pleadings, files, and records that the prisoner is not entitled to relief." *United States v. Rashaad*, 249 Fed. Appx. 972, 973 (4th Cir. 2007) (citing *Raines v. United States,* 423 F.2d 526, 529 (4th Cir. 1970)).

**B.    Motions to Dismiss under Rule 12(b)(6) in § 2225 Proceedings**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of claims for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  A court may consider a motion to dismiss pursuant to Rule 12(b)(6) challenging the legal sufficiency of a § 2255 motion.  *See United States v. Reckmeyer*, No. 89-7598, 1990 WL 41044, at \*4 (4th Cir. 2 Apr. 1990); *see also Walker v. True*, 399 F.3d 315, 319 (4th Cir. 2005) (vacating district court's order allowing the government's motion to dismiss petitioner's motion under 28 U.S.C. § 2254 ("§ 2254")[3] because the district court did not properly apply the Rule 12(b)(6) standard when it failed to assume all facts pleaded by petitioner to be true and considered material not included in the petition); Rule 12, Rules Governing § 2255 Proceedings (expressly allowing the application of the Federal Civil Rules where "they are not inconsistent with any statutory provisions or these [§ 2255] rules"); Fed. R. Civ. P. 81(a)(4) (providing that the Federal Rules of Civil Procedure may be applied in § 2255 proceedings where a particular practice has not been specified by § 2255 and where such practice has "previously conformed to the practice in civil actions").

A motion to dismiss should be granted only if "it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).  In analyzing a Rule 12(b)(6) motion, a court must accept as true all well-pleaded allegations of the challenged pleading. *Nemet Chevrolet Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S.

---

[3] Section 2254 also incorporates the Federal Rules of Civil Procedure. *See* Rule 12, Rules Governing § 2254 Proceedings; *see also* Fed. R. Civ. P. 81(a)(4).

662, 678 (2009)); *see also E.I. du Pont de Nemours and Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (court must accept as true all factual allegations of the complaint). All reasonable factual inferences from the allegations must be drawn in plaintiff's favor. *Kolon Indus., Inc.*, 637 F.3d at 440 (citing *Nemet Chevrolet Ltd.*, 591 F.3d at 253). However, case law requires that the factual allegations create more than a mere possibility of misconduct. *Coleman v. Maryland Court of Appeals.*, 626 F.3d 187, 190 (4th Cir. 2010) (citing *Iqbal*, 556 U.S. at 679). The allegations must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Likewise, a pleading purporting to assert a claim is insufficient if it offers merely "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555 (internal quotation marks omitted)).

## C. Ineffective Assistance of Counsel

To state a claim of ineffective assistance of counsel, a petitioner must satisfy a two-prong test. *Strickland v. Washington*, 466 U.S. 668, 686-87 (1984). First, a petitioner must show that the representation he received fell below an objective standard of reasonableness. *Id.* at 688. The reviewing court must be "highly deferential" of counsel's performance and must make every effort to "eliminate the distorting effects of hindsight." *Id.* at 689. Therefore, the court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*

Concerning the second prong, a petitioner must demonstrate that he was prejudiced by the ineffective assistance. *Id.* Specifically,

> [t]he [petitioner] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Id.* at 694. The court may address the prejudice prong before the performance prong or even address only one prong if the petitioner has made an insufficient showing on the other prong. *Id.* at 697.

The *Strickland* test applies to claims that counsel was constitutionally ineffective for failing to file a notice of appeal. Defense counsel has a duty to file an appeal if unequivocally instructed to do so by the defendant. *United States v. Poindexter*, 492 F.3d 263, 268 (4th Cir. 2007). "We have long held that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 478 (2000) (citing *Rodriquez v. United States*, 395 U.S. 327 (1969)). "[A] defendant who instructs counsel to initiate an appeal reasonably relies upon counsel to file the necessary notice." *Id.* Where an attorney does not file an appeal as unequivocally instructed by his client, prejudice is presumed, even if the appeal would not have been successful, because it effects forfeiture of the appellate proceeding. *Poindexter*, 492 F.3d at 268.

In cases where the attorney is not specifically instructed to appeal, a duty to consult about an appeal may be required as set forth in *Flores-Ortega*, wherein the Supreme Court held that:

[C]ounsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing.

528 U.S. at 480; *see also Torres-Eguino v. United States*, No. 4:11-CR-107-FL-2, 2016 WL 4005758, at *2 (E.D.N.C. 26 July 2016) ("'If his attorney was not so [unequivocally] instructed [to appeal], the court will have to determine if [the defendant] met his burden of showing that: (1) his attorney had a duty to consult under *Flores-Ortega*; (2) his attorney failed to fulfill his

7

consultation obligations; and (3) he was prejudiced by his attorney's failure to fulfill these obligations.'" (quoting *Poindexter*, 492 F.3d at 273)). The Supreme Court emphasized that it "employ[ed] the term 'consult' to convey a specific meaning–advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Flores-Ortega*, 528 U.S. at 478. "If counsel has consulted with the defendant, the failure to file an appeal is deficient only if it contradicts the defendant's instruction to appeal." *Hudson v. Hunt*, 235 F.3d 892, 896 (4th Cir. 2000). "In determining whether a rational defendant would have wanted to appeal, we consider important the facts concerning whether the defendant's conviction followed a trial or a guilty plea; whether the defendant received the sentence bargained for as part of the plea; and whether the plea expressly reserved or waived some or all appeal rights." *United States v. Cooper*, 617 F.3d 307, 313 (4th Cir. 2010) (citing *Flores-Ortega*, 528 U.S. at 480). "[P]rejudice will be presumed if the defendant can show that, had he received reasonable advice from his attorney, he would have instructed his attorney to file a timely notice of appeal." *Poindexter*, 492 F.3d at 268–69 (citing *Flores-Ortega*, 528 U.S. at 486).

The *Strickland* test also applies to claims that counsel was constitutionally ineffective for failing to investigate. *See Strickland*, 466 U.S. at 690. The following standards apply in investigation cases:

> [S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information. For example, when the facts that support a certain potential line of defense are generally known to counsel because of what the defendant has said, the need for further investigation may be considerably diminished or eliminated altogether. And when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable.

*Id.* at 690-91; *see also United States v. Roane*, 378 F.3d 382, (4th Cir. 2004) ("[A] criminal defense lawyer possesses a duty to conduct a pretrial investigation that is 'reasonable [ ] under prevailing professional norms.'" (quoting *Strickland*, 466 U.S. at 688)); *McCarver v. Lee*, 221 F.3d 583, 594 (4th Cir. 2000) ("In evaluating trial counsel's performance, we must be highly deferential to counsel's strategic decisions and not allow hindsight to influence our assessment of counsel's performance." (citing *Strickland*, 466 U.S. at 689)).

### D.   Legal Standards for Determining Credibility

In assessing the credibility of witnesses, trial courts consider "variations in demeanor and tone of voice." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 575 (1985). In addition, "[d]ocuments or objective evidence may contradict the witness' story; or the story itself may be so internally inconsistent or implausible on its face that a reasonable factfinder would not credit it." *Id.*; *see also United States v. Marcavage*, 609 F.3d 264, 281 (3rd Cir. 2010) (applying factors in *Anderson* in holding that trial court's crediting of the government's evidence was error on the grounds that "[t]here are simply too many inconsistencies and gaps in the testimony of the government's witnesses, not to mention substantial contradictions between that testimony and other evidence in the record"). Additional considerations can include the witness's motive to lie

and the level of detail in the witness's statements. *See, e.g., United States v. Wilson*, 624 F.3d 640, 665 (4th Cir. 2010).

## II.   COUNSEL'S ALLEGED FAILURE TO FILE AN APPEAL OR CONSULT ABOUT AN APPEAL (GROUND 1)

The court first turns to the claim raised by petitioner in Ground 1 of the petition that he received ineffective assistance of counsel because Smith failed to file an appeal as purportedly unequivocally instructed by him or to properly consult with him regarding an appeal. The contention lacks merit.

### A.   Factual Background

Petitioner testified as follows: At a meeting with Smith prior to the signing of the plea agreement, Smith explained to him the contents of the plea agreement, including the appeal waiver provision in paragraph 2.c, which Smith made sure petitioner understood. Tr. 20:17 to 21:11. Smith also went over the process of appealing and the need to file an appeal within 14 days after sentencing, though Smith discouraged petitioner from pursuing an appeal. Tr. 21:12-20; 22:23 to 23:3. Apparently at this meeting, petitioner told Smith that he wanted to appeal because the term of imprisonment he faced was excessive. Tr. 15:20 to 16:2; 28:23 to 29:11; 36:22 to 37:12. Smith also spoke with petitioner in the courthouse immediately prior to the sentencing hearing on 1 April 2014, but they did not discuss an appeal at that time. Tr. 14:20 to 15:4; 36:24 to 37:6. Petitioner believes there was at some point at least one additional conversation between him and Smith relating to an appeal, but it was only at the discussion about the plea agreement that petitioner requested that Smith file an appeal. Tr. 15:17 to 16:2; 28:23 to 29:11.

After sentencing, Smith never spoke to petitioner in person or on the phone about an appeal or anything else. Tr. 15:5-9. Petitioner never received a letter to him from Smith dated 1

10

April 2014, which reviewed the appeal process and Smith's understanding that petitioner did not wish to pursue an appeal. Tr. 15:10-12; 1 Apr. 2014 Ltr. Petitioner never attempted to contact Smith following his sentencing purportedly because he was unable to (Tr. 15:13-16; 29:25 to 30:8) and believed it was unnecessary since he had already instructed Smith to file an appeal (Tr. 30:9-11).

Turning to Smith's testimony, he first discussed with petitioner the right to appeal at a meeting with petitioner at which they also discussed the terms of the plea agreement. Tr. 46:5 to 49:6. The discussion included Smith's review of the appeal waiver provision in paragraph 2.c of the plea agreement and the 14-day deadline for filing an appeal. Tr. 47:9 to 48:7. Smith also told petitioner, in accordance with his usual practice, that notwithstanding the waiver provision he had an absolute right to appeal. Tr. 48:7-25. At this meeting and all other meetings with petitioner, Smith brought an interpreter with him to translate important documents for petitioner, including the plea agreement, and to otherwise facilitate communication with petitioner. Tr. 41:5-12; 46:10-15; 48:21-23.

Smith next discussed an appeal with petitioner after receipt of the initial draft of the presentence report. Tr. 49:6-10. At that meeting, petitioner initially stated that he was going to appeal because he believed the sentence provided for in the presentence report was more severe than he deserved. Tr. 49:9-10. Smith discussed with petitioner the appeal process, the chances of an appeal succeeding, and the appeal waiver in the plea agreement. Tr. 49:10-12. He advised petitioner to wait and see what happened, particularly the extent of the downward departure the government would request based on substantial assistance (pursuant to § 5k1.1 of the United States Sentencing Guidelines). Tr. 49:17 to 50:2. Smith asked petitioner if he wanted to appeal

and petitioner stated, in Smith's words, "[W]e'll see, I don't think so." Tr. 49:12-14. Petitioner

never said he wanted an appeal at that time. Tr. 49:14-15.

The last time Smith discussed appeal rights with petitioner was on the day of sentencing

prior to the sentencing hearing. Tr. 50:5-8. Petitioner told Smith that he did not want to appeal.

Tr. 50:16-19; 51:12-24.

Smith did not speak to petitioner following the sentencing hearing. Tr. 41:25 to 42:7;

70:9-12. However, on that day, 1 April 2014, Smith mailed petitioner the letter bearing that date

previously referenced in accordance with his practice for clients who do not appeal. Tr. 54:9-18.

He sent the letter to the facility where petitioner had last been housed. Tr. 54:12-13.

The text of the letter reads:

I am writing to you to remind you of our discussion regarding your right to
appeal. As you recall, if you wish to appeal your case you must do so within
fourteen days of the entry of judgment. The entry of judgment is usually, but not
always, filed on the same day as your sentencing. *If you do not inform me
otherwise, I will not file a notice of appeal in your case per our discussions.*

Also, you signed a waiver of appeal in your case with regard to most issues. This
does not prevent you from entering a notice of appeal. If you still wish to appeal
your case the Court will appoint you counsel to move forward. But, unless you
are appealing one of the issues that is excluded from your waiver it is likely that
the Government will successfully move the Court to dismiss your case.

*The bottom line is that when we spoke it did not appear that you wanted to appeal
your case.* I also do not believe that you have a good issue for appeal. But, you
have the right to enter an appeal so long as you do it within fourteen days of the
entry of the judgment in your case. *Finally, to recap, it is my understanding that
you do not wish to appeal your case. Therefore, I am not going to file an appeal.
If you change your mind tell me as soon as possible so that I can enter you[r]
notice of appeal in a timely manner.*

1 Apr. 2014 Ltr. 1 (emphasis added). The letter was never returned to Smith. Tr. 54:13.

### B.    Alleged Violation of Duty to File An Appeal

The court finds that petitioner has failed to establish by a preponderance of the evidence that he unequivocally instructed Smith to file an appeal. Fundamental to the court's conclusion is that it finds Smith's testimony on the material factual issues to be credible and petitioner's contrary testimony not credible.

Among other reasons, Smith's testimony was matter-of-fact, not adversarial, in tone. He evinced no hostility, but rather genuine concern about achieving the best possible outcome in petitioner's criminal case. His credibility is further supported because of his substantial experience as a criminal defense attorney. He has been representing defendants in federal criminal cases since 2003. Tr. 39:2-7.

Moreover, his representation has included handling appeals. Tr. 39:13-22. Thus, filing an appeal on petitioner's behalf would not have been an unfamiliar, potentially off-putting task for Smith, but a matter of routine.

Further, Smith's conduct in representing petitioner, as described in his testimony, is consistent with that of an experienced criminal defense lawyer. Smith's testimony demonstrates a conscientious and proper effort on his part to make sure that petitioner understood the advantages and disadvantages of appealing and not appealing. Indeed, petitioner's sentence was significantly lower than his calculated guideline range, which any reasonable defense attorney in the instant criminal case would view as a favorable outcome that did not warrant further challenge on appeal. In addition, petitioner had, with limited exceptions, waived his right to appeal his sentence in the plea agreement, thereby further eroding any justification for an appeal. *See* Plea Agmt. 1-2 ¶ 2.c.

The 1 April 2014 letter from Smith corroborates Smith's testimony that petitioner did not intend to appeal. The letter repeatedly expresses Smith's understanding that petitioner did not want to appeal. Smith testified that had petitioner asked him to file a notice of appeal, he would have done so. Tr. 58:13-15. This testimony is consistent with Smith's background and experience and common sense. Indeed, Smith himself noted that filing a notice of appeal would have taken him less time than the letter he wrote to petitioner following sentencing because he has a form notice and could simply have changed the name of the petitioner and case number on it. Tr. 58:5-12.

The credible nature of Smith's testimony discredits the contrary testimony by petitioner. Moreover, the scenario petitioner posits that he requested an appeal once and did not request it subsequently is implausible. It seems particularly unusual that at the meeting immediately prior to the sentencing hearing petitioner would not renew the instruction to appeal since the basis of his purported desire to appeal was the expected severity of the sentence he was about to receive.

Petitioner's testimony that he did not attempt to contact Smith about an appeal after the sentencing hearing also discredits his testimony that he ever directed Smith to file one. A person in custody who believed an appeal had been filed could reasonably be expected to contact his lawyer about the status of the appeal. Petitioner's claim that he was unable to contact Smith is not only incredible on its face, but petitioner himself acknowledged at the hearing that he had previously sent Smith a letter. Tr. 30:5-8. For this and the other reasons stated, the court concludes that petitioner has failed to show by a preponderance of the evidence that he unequivocally directed Smith to file an appeal.

## C.    Alleged Violation of Duty to Consult

Turning now to the duty to consult, petitioner has failed to show that he "reasonably demonstrated to counsel that he was interested in appealing" for the same reasons that he failed to demonstrate that he unequivocally instructed Smith to file an appeal. *Flores-Ortega*, 528 U.S. at 480. No duty to consult therefore arose on this basis.

Nor has petitioner demonstrated the other basis for imposition of the duty to consult about an appeal—namely, that a rational defendant would intend to appeal under the circumstances presented. *Id.* As noted, petitioner's conviction resulted from a guilty plea which expressly waived appeal rights. *Dyer v. United States*, No. 5:13-CR-00107, 2016 WL 1019438, at *7 (S.D.W. Va. 19 Feb. 2016) ("Although a guilty plea is not a 'determinative factor' in the analysis, it remains 'highly relevant' as 'a guilty plea reduces the scope of potentially appealable issues' and 'may indicate that the defendant seeks an end to judicial proceedings.'" (quoting *United States v. Gonzalez*, 570 F. App'x 330, 337 (4th Cir. 2014)), *rep. & recomm. adopted*, 2016 WL 958711 (14 Mar. 2016). In addition, petitioner received the sentence bargained for pursuant to the plea agreement. Finally, as set forth in more detail below, the existence of any nonfrivolous grounds forming a basis for appeal are not apparent. *See Faison v. United States*, 17 F. Supp. 3d 550, 554 (E.D. Va. 2014) (holding that petitioner failed to show that a rational defendant would have intended to appeal in part because "although the Petitioner raised several issues in her Motion, as the court noted in the court's Memorandum Order, none of these grounds had merit, and the court sees no apparent grounds for appeal in this case"), *appeal dismissed*, 589 F. App'x 166 (4th Cir. 2015); *Harris v. United States*, No. 5:12-CR-120-D, 2014 WL 1233115, at *5 (E.D.N.C. 25 Mar. 2014) (finding no rational defendant would have appealed

considering, among other factors, the fact that "[petitioner] does not raise any non-frivolous claims concerning his conviction").

In any event, as the prior discussion of Smith's communications with petitioner regarding an appeal demonstrates, Smith did consult with him about an appeal. Indeed, petitioner himself testified that Smith explained the appeal process to him in connection with their review of the plea agreement. Tr. 20:17 to 21:20.

Petitioner suggests that, even if Smith did consult with him about an appeal, the consultation was inadequate because Smith did not instruct him how to file pro se. But since petitioner had counsel, no such instructions were warranted, particularly in the absence of any indication that petitioner wished to proceed pro se. Petitioner's interests were clearly better protected by having his attorney file any notice of appeal.

For the foregoing reasons, the court concludes that petitioner has failed to show by a preponderance of the evidence that Smith had a duty to consult with him about an appeal or that, assuming such a duty existed, he failed to consult as required. Accordingly, petitioner's ineffective assistance of counsel claim raised in Ground 1 of his petition should be dismissed in its entirety.

## III.    COUNSEL'S ALLEGED FAILURE TO INVESTIGATE (GROUND 2)

In Ground 2 of his petition, petitioner contends that he received ineffective assistance of counsel because Smith purportedly failed to adequately investigate facts relating to the charge of aggravated identity theft under 18 U.S.C. § 1028A(a)(1) in Count 21 of the indictment. The court finds the contention meritless.

### A.    Legal and Factual Background

Section 1028A reads in relevant part:

> Whoever, during and in relation to any felony violation enumerated in subsection (c), knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person shall, in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of 2 years.

18 U.S.C. § 1028A(a)(1).

Count 21 of the indictment charged petitioner as follows:

> 40. On or about November 29, 2011, in the Eastern District of North Carolina and elsewhere, defendant TINOCO did knowingly transfer, possess, and use, without lawful authority, a means of identification of another person, during and in relation to false personation of citizenship, to wit, 18 U.S.C. Section 911.

> All in violation of Title 18, United States Code, Section 1028A.

Indict. 21, ct. 21.[4] The basis for the charge is petitioner's use of a birth certificate and Social Security number (the first three numbers of which are 644) in the name of "Eli Valle" to the North Carolina Division of Motor Vehicles ("DMV") on 29 November 2011 to obtain a North Carolina identification card, falsely representing himself to be a citizen of the United States. *See*, *e.g.*, ICE Investigation Rep. 15; Stips. nos. 4, 5, 9; Copy of Valle N.C. Identification Card (Jt. Ex. 3) (showing issuance date of 29 Nov. 2011).

It is undisputed that the individual whose birth certificate is the subject of the birth certificate and Social Security number in the name of Eli Valle had another birth certificate in a different name, Eli Sierra. *See*, *e.g.*, Stips. no. 2. This individual also has a Social Security number (the first three digits of which are 237) under the name Eli Sierra. *Id.* no 3. Sierra is the surname of the individual's father, Carlos H. Sierra, and Valle that of the individual's mother, Ana Valle. *See*, *e.g.*, *id.* nos. 4, 6; Valle Birth Cert.; Sierra Birth Cert.

---

[4] Section 911 of Title 18 reads:

> Whoever falsely and willfully represents himself to be a citizen of the United States shall be fined under this title or imprisoned not more than three years, or both.

18 U.S.C. § 911.

This individual uses the name Eli Sierra. Stips. no. 10. He has not used the name Eli Valle or the birth certificate or Social Security number in that name. *Id.*

The issuance of the two birth certificates and Social Security numbers appears to arise from the separation of his parents at the time of his birth. Stips. no 6. The birth certificates indicate that Eli Sierra's mother obtained the birth certificate in the name of Eli Valle and his father the birth certificate the birth certificate in the name of Eli Sierra. Valle Birth Cert. (identifying Ana Valle as the "Informant" in box no. 20); Sierra Birth Cert. (identifying Carlos H. Sierra as the "Informant" in box no. 18). Eli Sierra reported to investigators that his mother obtained the Social Security numbers in each of the names Eli Sierra and Eli Valle. Stips. no. 6.

Petitioner obtained the birth certificate and Social Security number in the name of Eli Valle from Eli Sierra.[5] Stips. no. 7. Petitioner adopted the identity of Eli Valle as his own. *See*, *e.g.*, Tr. 8:11 (petitioner identifying himself at the hearing as "Eli Valle Ernesto Tinoco"); 8:25 to 9:7 (petitioner's testimony that he started using the Eli Valle identity when he obtained the North Carolina identification card, although he misstated the date for doing so as "29 November of 2012—13"); 59:24 to 60:4; ICE Investigation Rep. 10-11.

In December 2011, the month after petitioner obtained the North Carolina identification card in the name of Eli Valle, he presented to the North Carolina DMV the identification card and the Social Security card in the name of Eli Valle, along with an insurance policy, and obtained a North Carolina driver's license in the name of Eli Valle. ICE Investigation Rep. 15 (stating 16 Dec. 2011 as the date petitioner went to the DMV for the license); Stips. no. 9; Copy

---

[5] There is a dispute between petitioner and Eli Sierra as to whether Eli Sierra gave petitioner permission to use the birth certificate and Social Security number in the name of Eli Valle or when, if at all, he withdrew any such permission. Stips. no. 8. The parties stipulate that this factual dispute is not material to any element of § 1028A. *Id.*; *see United States v. Otuya*, 720 F.3d 183, 189-90 (4th Cir. 2013) (holding that a person can commit aggravated identity theft even with the victim's consent). The court thereby deems petitioner to have waived any claims based on the existence or absence of consent by Eli Sierra to use of the Eli Valle identity.

of Valle N.C. Driver's License (Jt. Ex. 3) (showing issuance date of 30 Dec. 2011). Prior to petitioner's use of the name Eli Valle and obtaining a driver's license under that name, there is no record of Eli Sierra or anyone else using that identity in any public database the parties in this proceeding were able to find, other than Eli Sierra's mother's use of the birth certificate in the name of Eli Valle to obtain a Social Security number in that name. Stips. nos. 6, 12.

Petitioner argues that Smith rendered ineffective assistance by not investigating the Eli Valle identity adequately, specifically, to determine whether it is, as petitioner alleges, "a secondary or shadow identity of another person that was never used." Tr. 5:7-10. The record shows that Smith did not do so. *See, e.g.*, Tr. 69:7-14. Petitioner argues that given the purported secondary or shadow nature of the Eli Valle identity, the birth certificate and Social Security number petitioner presented to the North Carolina DMV do not come within the scope of "means of identification of another person" as used in § 1028A. Thus, the argument goes, proper investigation would have shown that petitioner has this defense to the aggravated identity theft charge.

### B.    Prejudice Prong

Petitioner's contention fails to meet the prejudice prong of the *Strickland* test. One reason is that the birth certificate and Social Security number in the name of Eli Valle fall squarely within the definition of "means of identification of another person" as used in § 1028A. In *United States v. Mitchell*, 518 F.3d 230 (4th Cir. 2008), the Fourth Circuit expounded on the meaning of "means of identification of another person" as used in § 1028A:

> [T]he statute provides a definition that plainly clarifies the meaning of "a means of identification of another person." "Means of identification" is defined as
>
> any name or number that may be used, alone or in conjunction with any other information, to identify a *specific individual*, including any—

19

(A) name, social security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number;

(B) unique biometric data, such as fingerprint, voice print, retina or iris image, or other unique physical representation;

(C) unique electronic identification number, address, or routing code; or

(D) telecommunication identifying information or access device (as defined in section 1029(e)).

18 U.S.C. § 1028(d)(7) (emphasis added). The definition's overriding requirement is that a means of identification—that is, an identifier or identifiers— must be sufficient "to identify a specific individual." More particularly, the definition of a means of identification encompasses "any name or number that may be used, *alone or in conjunction with any other information*, to identify a specific individual." 18 U.S.C. § 1028(d)(7) (emphasis added). The definition, in other words, allows for an identifier, taken alone or together with other information, to qualify as a means of identification so long as the sum total of information identifies a specific individual. Many of the identifiers listed as examples in the definition, such as a social security number, an alien registration number, or a fingerprint, are unique and therefore sufficient alone to identify a specific individual. The definition, however, also lists non-unique identifiers that are not sufficient to identify a specific individual. A name alone, for example, would likely not be sufficiently unique to identify a specific individual because many persons have the same name. Likewise, a date of birth by itself would not be sufficient because multitudes of persons are born on the same day. When, however, a non-unique identifier is coupled with other information to identify a specific individual, "a means of identification of another person" is created.

. . . .

The statutory definition of "means of identification" gives plain meaning to the phrase "means of identification of another person." The phrase means simply a means of identification (an identifier or combination of identifiers) that may be used to identify a specific individual. This plain meaning is conclusive because it does not contravene Congress's intent to create a separate offense that provides enhanced penalties for persons who steal or use the identities of others to commit certain crimes.

*Mitchell*, 518 F.3d at 234-35 (emphasis original).

Here, the Social Security number in the name of Eli Valle serves as a unique identifier for

Eli Sierra because he is the person to whom it was issued. Even if the Social Security number

were not deemed a unique identifier in this context, it does identify Eli Sierra when considered in

conjunction with the information Eli Valle had and disclosed to investigators regarding the origin of the number. The fact that petitioner is the source of the information does not exclude it from consideration. The statutory definition of "means of identification" permits the consideration of "*any* other information."[6] 18 U.S.C. § 1028(d)(7) (emphasis added).

The birth certificate in the name of Eli Valle also provides a means of identifying Eli Sierra when considered with the information petitioner had and disclosed to investigators regarding the connection of the birth certificate to Eli Sierra. Independent of any such information, the birth certificate in the name of Eli Valle can be considered in conjunction with the birth certificate in the name of Eli Sierra to identify Eli Sierra. Like the birth certificate in the name of Eli Valle, the birth certificate in the name of Eli Sierra identifies a male individual who was born on 5 November 1987, bearing the relatively unusual first name of Eli, at 2:32 a.m. in Travis County, Austin, Texas to a woman, age 31, named Ana Valle of Honduran origin at a common, specified address. *Compare* Sierra Birth Cert. *with* Valle Birth Cert. The birth certificates also bear the same registrar's file number. Valle Birth Cert.; Sierra Birth Cert. The similarities the birth certificate in the name of Eli Valle has to the birth certificate in the name of Eli Sierra makes unreasonable any notion that the Eli Valle identity belongs to someone other than Eli Sierra.[7]

---

[6] There is no dispute that the Social Security number was well as the birth certificate in the name of Eli Valle meet the requirement that the means of identification consist of "any name or number." 18 U.S.C. § 1028(d)(7). The Social Security number is one of the types of numbers the statute expressly identifies as meeting the requirement. *Id.* § 1028(d)(7)(A). The birth certificate is a compilation of names and numbers, including, of course, a date of birth also recognized expressly by the statute as being "any number" within the definition. *Id.*

[7] Petitioner's counsel suggested at the hearing that the birth certificates could be interpreted as being for twins (Tr. 85:12-14), but in that event the time of birth would be different. It is not uncommon to hear of one twin claiming to be the other twin's older brother or sister based on having been born a matter of minutes before the other twin.

There, of course, is no dispute that Eli Sierra is a real person. Not only do petitioner's testimony and investigative statement about the origin of the Eli Valle identity make that clear, but the parties stipulated that Eli Sierra is a real person. Stips. no. 1.

Petitioner harps on the point that the birth certificate and Social Security number in the name of Eli Valle alone do not in any way tie the Eli Valle identity to Eli Sierra. As discussed, given its status as a unique identifier, that assertion is not valid with respect to the Social Security number. In any event, though, as discussed, the definition of "means of identification" does not require that a means of identification standing alone permit the identification of another person. To the contrary, it expressly provides that a means of identification is sufficient if enables the identification of another person when considered in conjunction with other information. *See* 18 U.S.C. § 1028(d)(7); *Mitchell*, 518 F.3d at 234.

Petitioner also argues that the means of identification must have been used to be actionable under § 1028A. But the birth certificate of Eli Valle was used. As noted, petitioner admits that Eli Sierra's mother used it to obtain the Social Security number in Eli Valle's name.

More fundamentally, § 1028A imposes no requirement of prior use. Again, the *Mitchell* court held that the "plain meaning" of the phrase "means of identification of another person"— that a means of identification may be used to identify a specific individual—"is conclusive." *Mitchell*, 518 F.3d at 235. Although petitioner cites *Mitchell* in support of his contention, as can be seen, *Mitchell* refutes it.[8]

Common experience teaches that nonuse or minimal use by a person of a name does not negate it as an identifier of that person. For example, nonuse by a married woman of her maiden

---

[8] In *Mitchell*, the court held that the identifier at issue in that case, a person's name, was insufficient to identify a specific individual because more than one individual could have had that name. Here, there is no contention that the Eli Valle identity points to any individual other than Eli Sierra. Petitioner's reliance on *Mitchell* is misplaced on this additional ground.

name does not mean that her maiden name ceases to identify her. Similarly, nonuse by a person of his formal name, in favor of a nickname, does not negate the formal name as an identifier of the person.

Stated differently, nonuse or minimal use of an identity reflected in a means of identification does not necessarily insulate the person to whom the identity belongs from having it stolen. That is what happened in this case. Indeed, at least in theory, Eli Sierra continues to face the risk that petitioner could exploit the birth certificate and Social Security number in the name of Eli Valle to attribute to Eli Sierra his own past or future misconduct.

The further proposition that a means of identification must be used by the person to whom the identity belongs is discredited by the Fourth Circuit's decision in *Otuya*, 720 F.3d 183. There, the court ruled that a fake document can qualify as a means of identification under § 1028A. *Otuya*, 720 F.3d at 189-90. The person to whom the identification belongs would obviously be unlikely to use such means himself.

Petitioner contends that the purported fact that Eli Sierra has not suffered any consequences as a result of his offense conduct in the name of Eli Valle shows that the Eli Valle identity is completed separate from Eli Sierra and should not be deemed the identity of a real person. He cites the apparent absence of offenses committed by him in the name of Eli Valle from the criminal record of Eli Sierra. *See* Stips. no. 11. But petitioner has failed to demonstrate that Eli Sierra has not suffered any consequences from petitioner's use of the Eli Valle identity or, as noted, that Eli Sierra is insulated from any consequences in the future. Moreover, absence of harm in one area, such as the integrity of one's criminal history, does not preclude harm in another area, such as creditworthiness. In any event, harm to the person to whom the identity belongs, beyond the theft itself, is not an element of the offense of aggravated identity theft.

In addition, petitioner has not shown that further investigation by Smith would have produced any materially different information than petitioner testified he already had. Smith, of course, had access to the investigation report reciting petitioner's statement about the issuance of the birth certificates and Social Security numbers in the names of Eli Valle and Eli Sierra, and his acquisition of the Eli Valle identity. Petitioner also testified that he told Smith this information. Tr. 10:24 to 11:4. He testified that he also told Smith that he had a record check done showing that there were no records of anyone using the birth certificate or Social Security number in the name of Eli Valle, from which petitioner testified he concluded that "that person did not exist in 25 years." Tr. 10:4-14. Notwithstanding this investigation, petitioner testified that he asked Smith to go the DMV and "make sure that there existed no such person that existed by the name Eli Valle." Tr. 10:15-19. In essence, petitioner was asking Smith to simply confirm the results of the investigation he testified he had already done and disclosed to Smith, but limiting the further investigation to DMV records.

By his own stipulation, petitioner concedes that the further investigation he requested Smith to perform would not have produced any information contradicting the results of the investigation he claimed he had already had done. Specifically, he stipulated jointly with the government that "[p]rior to Jorge Tinoco's use of the name Eli Valle and obtaining a driver's license under that name, there is no record of anyone else, including Eli Sierra, using that identity in any public database that the parties were able to find." Stips. no. 12. Thus, petitioner has failed to show that had the investigation he purportedly requested from Smith been done it would have had any impact on the outcome of the case.

Petitioner has failed to establish prejudice in another sense. The outcome achieved by petitioner in the underlying criminal case was one very favorable to petitioner. Petitioner has not

24

shown that the outcome would have been more favorable had his counsel not underperformed as alleged.

The plea agreement petitioner entered into enabled him to plead guilty to only two of the counts against him (*see* Plea Agmt. 1 ¶ 2.a) and to obtain dismissal of the remaining six counts (*see* J. (D.E. 79) (1 Apr. 2014)), although, admittedly, as discussed below, a polygraph test petitioner took apparently convinced the government petitioner was not guilty of two of these counts. The plea agreement also contemplated cooperation by petitioner with the government. Plea Agmt. 6 ¶ 4.d. The cooperation he provided resulted in a reduction of his sentence of 25 percent. Tr. 53:17-19.

Smith testified at hearing that petitioner would likely not have fared as well without pleading to the aggravated identity theft charge: "I don't think the Government would have let him plead without that charge. He would have probably been forced to the trial; he almost certainly would not have gotten substantial assistance." Tr. 63:6-9. He also stated that there were additional charges not included in the indictment that could have been brought against petitioner. Tr. 63:11-18. Petitioner has not made a showing countering Smith's assessment.

Moreover, it is apparent that the government had a very strong case on the aggravated identity charge. The evidence supporting its case included petitioner's own statement recited in the investigation report and the birth certificate in the name of Eli Valle.[9] In addition, Smith testified that there were other identities that could have been the basis for a § 1028A charge and that petitioner did not have a chance of avoiding guilt for that offense. Tr. 67:18-23.

Petitioner argues that the lack of investigation, and related legal research, by Smith regarding the purported secondary or shadow nature of the Eli Valle identity deprived petitioner

---

[9] The birth certificate in the name of Eli Sierra was not obtained until immediately prior to the § 2255 hearing. *See* Stips. 3 n.1.

of significant leverage in plea negotiations. The lack of legal authority for petitioner's theory on secondary or shadow means of identification, as previously discussed, belies the notion that he would have gained material leverage by invoking it.

For this and the other reasons stated, petitioner has failed to show by a preponderance of evidence that he was prejudiced by the alleged ineffective assistance of his counsel with respect to the aggravated identity theft charge. This deficiency provides an independent basis for dismissal of Ground 2 of petitioner's petition.

## C.    Performance Prong

Alternatively, the court finds that petitioner has failed to show that the investigation undertaken by Smith regarding the aggravated identity theft charge in Count 21 fell below the standard of reasonableness. The court's analysis begins with a review of relevant portions of the indictment.

As noted previously, Count 21 does not specify the identity it alleges petitioner stole. Other counts of the indictment, however, do provide an alias it accuses petitioner of using—Raul Salinas. Specifically, Count 1, which charges conspiracy to defraud the United States by obtaining payment on false claims, alleges as overt acts in furtherance of the conspiracy that on 28 November 2011 and 7 June 2012 that petitioner opened post office boxes representing himself to be Raul Salinas. Indict. 6 ¶ 15.e; 7 ¶ 15.f. The alleged conspiracy involved use of post office boxes to receive fraudulent income tax refunds. *See* Indict. 4 ¶¶ 11 12. Counts 9 and 10 allege making a false statement to the United States based on the opening of the post office boxes, again, expressly alleging that petitioner used the name Raul Salinas. *Id.* at 16 ¶ 35; 17 ¶ 33.

Eli Valle is listed as an alias for petitioner in the caption of the indictment. *See* Indict. 1. Further, one of the alleged over acts in furtherance of the conspiracy charged in Count 1 include

petitioner's renting a trailer on or about 17 May 2012 representing himself to be "E.V." Indict. 7 ¶ 15.h. There is no other use of "Eli Valle" or "E.V." in the indictment.

Turning now to Smith's testimony, he testified that petitioner was using the name Eli Valle and, indeed, was in custody under that name. Tr. 59:24 to 60:3. Petitioner stated several times that he wanted to continue using that name. Tr. 60:3-4. As discussed further below, petitioner told Smith about his acquisition of the Eli Valle identity, of which Smith was already aware through petitioner's statement reflected in the investigation report. Tr. 60:7-11.

Petitioner was very concerned that the government believed he was Raul Salinas, and Smith and petitioner spent a lot of time discussing his not being Raul Salinas. Tr. 59:6-8. Petitioner ultimately took a polygraph test in order to obtain substantial assistance that showed he was not Raul Salinas. Tr. 43:8-20; 59:8-9. Smith stated that he recognized that the aggravated identity charge required that the identity stolen be that of a real person, leading him to question whether Raul Salinas was a real person. Tr. 61:1-4. Smith discussed the real-person requirement with petitioner. Tr. 614-5. After discussing not being Raul Salinas and while considering whether to plead guilty to the aggravated identity theft charge, petitioner asked Smith to check on whether Raul Salinas was a real person. Tr. 61:6-7. Petitioner did not ask Smith to investigate the Eli Valle identity. Tr. 67:9-11; 74:5-9.

Smith went to the Assistant United States Attorney assigned to the case, Susan Menzer ("Menzer"), about Raul Salinas. Tr. 61:6-9. She responded that while the government had associated Raul Salinas's individual taxpayer identification number with several identities, it knew that the Eli Valle identity was that of a real person. Tr. 61:9-12.

Smith went back to petitioner and told him that Menzer had said that Eli Valle was a real person and that the government was proceeding with the aggravated identity theft charge on the

basis of the Eli Valle identity. Tr. 61:12-14, 24-25. Petitioner responded, in Smith's words, "okay, yeah, that's right." Tr. 61:14. Petitioner explained his acquisition of the Eli Valle identity from Eli Sierra as set out in the investigation report in discovery. Tr. 62:4-10; *see also* Tr. 60:7-11. Smith and petitioner agreed that Eli Valle was the identity of a real person and that the charge was for aggravated identity theft of the identity of a real person. Tr. 61:25 to 62:1. The discussion of the Eli Valle identity was brief. Tr. 75:4-8. Petitioner did not raise the issue again before filing his § 2255 petition. Tr. 61:14-15; 62:13. Based on the communications from petitioner, Smith did not believe petitioner wanted him to investigate the Eli Valle identity further until he filed the § 2255 petition. Tr. 67:24 to 68:2.

The court finds the investigation undertaken by Smith, as depicted in his testimony, to be reasonable under the circumstances presented. The repeated presence of the name "Raul Salinas" in the indictment and the absence of the name "Eli Valle" in Count 21 and any other portion of the body of the indictment suggested that Count 21 related to the Raul Salinas identity. Both Smith and petitioner had this concern. In response to petitioner's specific request that he investigate the issue, Smith discussed it with the prosecutor handling the case. It was appropriate for Smith to contact the prosecutor, given her presumptive familiarity with the facts of the case as the attorney prosecuting it, the investigative resources available to the government, and the government's obligation under *Brady v. Maryland*, 373 U.S. 83, 87 (1963) to disclose exculpatory evidence. The appropriateness of speaking with the prosecutor was substantiated by her providing clarifying information about the aggravated identity theft charge.

Smith's decision to not conduct further investigation regarding the aggravated identity theft charge was justified, in part, by petitioner's agreement with Smith that Eli Valle was the identity of a real person. After all, petitioner was the one who had obtained the identity and was

28

therefore in the position of having firsthand knowledge about it. Smith's election not to investigate further was also justified by the prior statement by petitioner to investigators regarding his acquisition of the Eli Valle identity. In his testimony, Smith cited his conversations with petitioner and Menzer, as well as petitioner's statement to investigators, as reasons for why he deemed no further investigation to be warranted. Tr. 73:13-23.

Petitioner argues that Smith acted unreasonably in not pursuing the issue of prior use of the Eli Valle identity by Eli Sierra. The court disagrees.

Among other reasons, there is no legal authority providing that prior nonuse of a stolen identity excludes the associated means of identification from § 1028A that could have warranted further investigation. Even if there were, petitioner's statements to Smith and in the investigation report showed that the Eli Valle identity has been used previously. As noted, the birth certificate in the name of Eli Valle was used to obtain the Social Security number in the name of Eli Valle. Further, given the benefits to petitioner of the plea agreement, it was reasonable not to pursue a seemingly tenuous defense to the aggravated identity charge.

Petitioner argues that it should have been clear to Smith from the record that the identity subject to Count 21 was that of Eli Valle.[10] Petitioner points to the fact that the alleged offense date of 29 November 2011 is the same date given in the ICE investigation report for petitioner's presentation of the birth certificate and Social Security number in the name of Eli Valle to the North Carolina DMV. *See* ICE Investigation Rep. 15; Tr. 74:15-83:3. But Smith testified that there were other identities associated with petitioner and, although he appeared unable to recall whether any such identities were tied specifically to the 29 November 2011 date, he did not rule out that possibility. Tr. 74:10 to 75:4; *see also* Tr. 53:24 to 54:5; 67:18-23. The court is dubious

---

[10] In making this argument at the hearing, counsel erroneously refers to petitioner obtaining a driver's license, rather than an identification card, on 29 November 2011. *See, e.g.*, Tr. 82:9-13; *see also* Supp. to Pet. Mem. 1.

that the coincidence in dates petitioner points to necessarily should have alerted Smith that the identity subject to Count 21 was that of Eli Valle. Ultimately, the particular information that prompted Smith to contact Menzer is immaterial because he did elicit the disclosure that the subject of Count 21 was the Eli Valle identity.

Petitioner's testimony regarding his discussions with Smith about Count 21 differs in several respects, as the discussion above regarding the absence of prejudice indicates. Petitioner testified that he told Smith about the check of public records he had had done and asked Smith to check specifically with the DMV that there were no records for Eli Valle. Tr. 10:5 to 11:4. Petitioner denied ever requesting that Smith check out records for Raul Salinas. Tr. 27:25 to 28:1. Smith denies that petitioner ever told him about the purported record check petitioner had done or that petitioner requested he check to see if anybody had previously used the Eli Valle identity. Tr. 67:4-8.

The court finds Smith's testimony credible. Had petitioner told him about the record check he had had done on the Eli Valle identity, there would have been no reason for Smith not at least to have discussed it with Menzer, even if there was ample reason not to assert it as a defense. Further, petitioner nowhere testified that he protested to Smith after Smith spoke to him about his discussion with Menzer that he had failed to address the prior use issue. Petitioner's credibility is further undermined by the propensity not to be truthful demonstrated in his testimony about appealing, as previously discussed. It would certainly seem inequitable for a defendant to blame his counsel for not investigating a matter while withholding from such counsel the fruits of his own investigation into the matter.

Petitioner contends that it is not credible that Smith asked Menzer about the Raul Salinas identity because at that point petitioner had purportedly already passed a polygraph showing that

he had not used that name as a condition to the government's entry into the plea agreement. But, as previously referenced, Smith testified that the polygraph was taken later for purposes of securing a motion by the government for downward departure based on substantial assistance pursuant to § 5k1.1 of the Sentencing Guidelines. *See* Tr. 43:5-20. Notably, the plea agreement provides that "the United States is not promising to move for departure pursuant to USSG § 5K1.1." Plea Agmt. 6 ¶ 4.d.

It is questionable in any event whether several of the discrepancies between Smith's and petitioner's testimony are material. For example, Menzer ended up providing information about the Eli Valle identity—the identity about which petitioner testified he sought information—even though she was asked about Raul Salinas. Similarly, while petitioner claims he requested information from the DMV, Menzer's sources extended well beyond that, albeit she would be serving as a conduit for the information provided.

The court concludes that petitioner has failed to establish by a preponderance of the evidence that the investigation Smith performed was not a reasonable exercise of professional judgment. Ground 2 of petitioner's petition is subject to dismissal on this additional ground.

## CONCLUSION

For the foregoing reasons, IT IS RECOMMENDED that the government's motion (D.E. 98) to dismiss be GRANTED as to Grounds 1 and 2 of petitioner's § 2255 petition (D.E. 90) and that Grounds 1 and 2 be DISMISSED.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until 22 September 2016 to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct her own review (that is, make a de novo determination) of those portions of

the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).**

Any response to objections shall be filed within 14 days after the filing of the objections.

SO ORDERED, this 8th day of September 2016.

James E. Gates
United States Magistrate Judge